SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NEIL A.F. POPOVIC, Cal. Bar No. 132403
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:  415.434.3947
E mail  npopovic@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JONATHAN H. STOLER, (Admitted, *pro hac vice*)
ROBERT S. FRIEDMAN, (Admitted, *pro hac vice*)
KEVIN J. SMITH, (Admitted, *pro hac vice*)
SHIN Y. HAHN, (Admitted, *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
Facsimile:  (212) 653-8701
E mail  jstoler@sheppardmullin.com
        rfriedman@sheppardmullin.com
        kjsmith@sheppardmullin.com
        shahn@sheppardmullin.com

*Attorneys for Plaintiff Fareportal Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAREPORTAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HNA GROUP (INTERNATIONAL) CO., LTD., HNA CAPITAL, LTD., JASON CHEN; LEI SHI; AND NISHITH KUMAR A/K/A NISHITH VARMA; <br><br> Defendants. | Case No. 21-cv-02841-YGR <br><br> **FAREPORTAL, INC.'S REPLY BRIEF IN SUPPORT OF PROPOSED PROTECTIVE ORDER** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br> Magistrate Judge: Hon. Thomas S. Hixson |

SMRH:4878-8663-8141.7

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and the Court's September 20, 2022 Discovery Order (Dkt. No. 87), Plaintiff Fareportal, Inc. ("**Fareportal**"), by and through its undersigned attorneys, respectfully submits the following reply brief in further support of its October 11, 2022 brief (Dkt. No. 92) regarding the categories of information that should be entitled to a "Highly Confidential – Kumar" designation ("**HC-Kumar**") such that they may not be viewed by pro se defendant Nishith Kumar (a/k/a Nishith Varma) in accordance with the Proposed Protective Order. As explained in Fareportal's opening brief, the Proposed Protective Order would permit Kumar to see documents and information designated "Highly Confidential – Attorneys' Eyes Only" ("HC-AEO"), which could not be seen by in-house attorneys or business representatives of other Defendants. Documents and information designated "HC-Kumar" could not be seen by in-house attorneys, business representatives, *or Kumar*. The documents in the HC-Kumar category are very limited; they include only (i) post-Fareportal employment financial information, (ii) post-employment supplier contracts and (iii) post-employment business planning information.

## I. Kumar's Arguments Fail to Demonstrate Any Prejudice

The Court's Discovery Order includes specific instructions for Kumar's brief: "For each of Fareportal's proposed categories, Defendants shall state if they object to that category being HC-AEO and then explain how, in their view, that designation prejudices them. This brief shall also respond to Fareportal's proposed adaptation of the Model Order." (Dkt. No. 87, at 4.) Kumar does neither, instead arguing that he "should be treated as 'outside counsel' and be allowed to see all documents related to the case unrestrictedly." (Dkt. No. 100, at 10.) Rather than engage on the relevant issues, Kumar makes unsupported and untrue factual assertions about the declaration of Werner Kunz-Cho submitted by Fareportal. Kumar's assertions are not evidence, and they are not relevant to the issues on which the Court requested briefing. Accordingly, Fareportal

confines its Reply Brief to addressing Kumar's arguments about the three proposed AEO sub-categories of HC-Kumar.[1]

### A. Post-Employment Financial Information

Kumar first argues that he should have access to Fareportal's financial information that post-dates his employment at Fareportal because publicly held OTA companies are required to disclose certain financial information. Public company financial disclosure requirements have no bearing on the confidentiality of Fareportal's sensitive financial information, and courts frequently protect financial information from discovery. *See W. Palm Beach Acquisitions Inc. v. KIA Motors Am., Inc.*, No. 2:21-mc-1103-RGK (MARx), 2021 U.S. Dist. LEXIS 241609, at *20-21 (C.D. Cal. Dec. 17, 2021) (denied plaintiff's motion to compel defendant's confidential financial information). Moreover, Fareportal is not a public company, so financial disclosure requirements applicable to public companies do not apply here.

Kumar cites decisions from courts in the Second Circuit (not the Ninth Circuit) to suggest that Attorneys Eyes Only ("AEO") designations should be used sparingly. Fareportal does not dispute that AEO designations should be used sparingly, and Fareportal's proposed categories are sparing, but that general principle does not determine whether particular categories of documents and information warrant protection in this case. Without question, courts in the Ninth Circuit recognize that competitively sensitive financial information may warrant AEO protection. *See, e.g., Ossur Holdings, Inc. v. Bellacure, Inc.,* No. C05-1552JLR, 2006 WL 8454851, at *2 (W.D. Wash. Jan. 9, 2006) (financial information received AEO designation); *Kaseberg v. Conaco, LLC*, No. 15CV01637JLSDHB, 2016 WL 3997600, at *13 (S.D. Cal. July 26, 2016) (non-public financial information received AEO protection).

---

[1] If the Court wishes, Fareportal is prepared to address Kumar's unsubstantiated assertions in whatever format the Court directs.

Kumar also asserts that Fareportal faces no risk of competitive harm if he were permitted to see Fareportal's confidential financial information because he does not currently work for a Fareportal competitor. However, as explained in Fareportal's opening brief (Dkt. No. 92), the risk remains that Kumar might try to harm Fareportal or financially benefit himself either by joining a competitor, disclosing information to a competitor, or launching his own competitive business.[2] *See 3 Sigma Corp. v. NuCoat, Inc.*, No. 3:10-cv-085, 2011 U.S. Dist. LEXIS 102697, at *3 (S.D. Ohio Sep. 12, 2011) (despite not presently being in direct competition with the defendant, a consultant in the same industry was not permitted to circumvent an AEO order because the court recognized that "[o]nce he learns the Defendants' trade secret information, there will be no identified barriers to his offering his services to one or more direct competitors").

Kumar argues that he needs access to Fareportal financial documents such as those provided to the New York Attorney General's Office to prove that the disparaging statements published about Fareportal were factually true. But the AG's findings were issued in 2022 and its investigation post-dated the timing of Defendants' disparaging statements, so documents related to the AG investigation would be irrelevant. Moreover, any documents sought, created, produced or received in connection with the investigation are protected by attorney-client privilege and the attorney work product doctrine, as well as confidentiality and non-disclosure protections under New York law. *See* N.Y. Pub. Off. Law § 87(2)(d).[3] Finally, financial information from the time period Kumar worked at Fareportal (2006 to May 2016) will not be designated HC-Kumar.

---

[2] As explained in Fareportal's opening brief, when Kumar previously had possession of Fareportal's confidential information he sought to use that information for his own benefit and to Fareportal's detriment. *See, e.g.,* Complaint ¶¶ 73-77, 194.

[3] *See In re Fareportal Inc.,* Assurance of Discontinuance, Assurance No. 22-016, at ¶ 62 (N.Y. Att'y Gen. 2022) ("Respondent shall not make or permit to be made any public statement denying, directly or indirectly, the propriety of this Assurance or the OAG investigation. Nothing in this paragraph affects Respondent's (i) testimonial obligations or (ii) right to take positions in defense of litigation or other legal proceedings to which the OAG is not a party. **This Assurance is not intended for use by any third party in any other proceeding**.") (emphasis added).

Kumar further contends that he needs access to Fareportal financial information to defend against Fareportal's damages claims.  When the time comes for Fareportal to present damages evidence, it will likely do so with the assistance of a damages expert who will  disclose the basis for his or her opinion, which Defendants, including Kumar, can challenge.  Kumar's hypothetical need to see some financial information at some point in order to respond to Fareportal's damages claim does not mean he has a current need for blanket access to Fareportal's financial information, regardless of timeframe—and he has not identified any cognizable prejudice that will flow from designating post-employment Fareportal financial information "HC-Kumar."

### B. Post-Employment Supplier Agreements

Kumar argues that he needs access to Fareportal's supplier agreements that post-date his employment because he anticipates a claim in which Fareportal accuses him of misappropriating trade secrets related to supplier agreements.  Kumar has not identified any such claim, much less why he would need to see Fareportal supplier lists that post-date his employment in order to defend himself.  The legal authority that supports protection of supplier information is clear and apposite  See *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 556 (C.D. Cal. 2007) ("customer and supplier lists… are customarily produced subject to an 'attorney's eyes only' order").

### C. Post-Employment Business Planning Information

Kumar argues that he should have access to Fareportal's business planning information that post-dates his employment at the company because Fareportal will otherwise "hide crucial documents" relevant to the dispute.  Kumar offers no evidence to support his inflammatory assertion, and in any event, it has nothing to do with the purpose of this briefing—i.e., to determine what categories of confidential information should be protected from disclosure to Kumar.  Kumar fails to explain how his inability to access Fareportal's business planning information after he left Fareportal would result in prejudice to him, or why disclosure of such information would not harm Fareportal. *See Ossur Holdings,* 2006 WL 8454851, at *2 (business plans received AEO designation).

Kumar asserts that he will need access to "all" of Fareportal's business planning documents to support his defense, but he fails to explain how such information would bolster his position, or why denying access would prejudice him.  Kumar argues further that he needs Fareportal's business planning information to show how Fareportal deceived consumers, but he fails to link any alleged deception of customers to any claims Fareportal has asserted against him in this case or how such information is relevant to the present dispute.  Nor does Kumar explain how not having access would cause him any prejudice.

Finally, Kumar repeats the argument that he is not a competitor of Fareportal.  As explained above, courts recognize that AEO protections apply for individuals who might disclose a company's trade secrets to competitors. *See 3 Sigma Corp.*, 2011 U.S. Dist. LEXIS 102697, at *3 (recognizing that industry consultant could harm defendant even if not currently a competitor).  Kumar also has a history of using confidential Fareportal information against Fareportal's interests. *See supra* fn. 2.  Moreover, Kumar again provides no argument as to how he would be prejudiced by not having access to Fareportal's business planning information.

### II. The Proposed Protective Order Includes a Log of HC-Kumar Documents That Kumar Can Review and Challenge

As explained in Fareportal's October 11, 2022 brief, the categories discussed above are very limited and all warrant HC-Kumar designation. Significantly, the Protective Order proposed by Fareportal requires a log of materials designated HC-Kumar, and it allows Kumar to seek relief from any designation he objects to.  Kumar asks the Court for unrestricted access to all documents Fareportal might produce, ignoring the log and challenge procedure, and failing to offer any suggestions regarding the form of the Proposed Protective Order, opting instead to reject the entire premise of the Court's Discovery Order.

/ / /

/ / /

/ / /

### III. Conclusion

In consideration of the arguments set forth above and in Fareportal's opening brief, Fareportal requests that the Court enter the Proposed Protective Order in the form attached to Fareportal's opening brief as Exhibit A.

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated: November 7, 2022

By /s/Neil A.F. Popović
NEIL A.F. POPOVIĆ
JONATHAN H. STOLER
ROBERT S. FRIEDMAN
KEVIN J. SMITH
SHIN Y. HAHN

*Attorneys for Plaintiff Fareportal Inc.*