UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAREPORTAL, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>HNA GROUP (INTERNATIONAL) CO., LTD., et al.,<br><br>        Defendants. | Case No. 21-cv-02841-YGR (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 92, 100, 103 |

We have a tricky discovery issue to deal with. Plaintiff Fareportal has sued Defendants HNA Group (International) Co., Ltd., Jason Chen and Nishith Kumar[1] for misappropriation of trade secrets and unfair competition, among other claims. ECF No. 1. The complaint alleges a concerted scheme to steal Fareportal's trade secrets and then defame the company. Given these allegations, Fareportal is concerned about what might happen to highly confidential materials it produces in discovery. For HNA and Chen, Fareportal proposes the traditional solution, which is to include an "attorneys' eyes only" level of confidentiality in the proposed protective order. This prevents the alleged bad actors from getting their hands on Fareportal's most sensitive stuff, while allowing them to fully defend the case because their lawyers and experts will have access to those materials.

The problem is what to do about Defendant Kumar, who is pro se. The complaint alleges in paragraphs 72, 77, 129, 141-43, 147, 174, and 177-78 that Kumar took and misused Fareportal's confidential information, including by emailing it to his personal email address and taking a company hard drive with him when he left. Fareportal argues that in light of these

---

[1] Fareportal dismissed defendant HNA Capital, Ltd. voluntarily. ECF No. 60. Defendant Lei Shi has not appeared in the action.

1  allegations, there should be some restrictions on Kumar's access to Fareportal's sensitive
2  commercial information. Because Kumar doesn't have a lawyer, this would carry the
3  consequence that he would be completely denied any use of that evidence.

4        The Court first addressed this issue in ECF No. 87. The Court noted that there didn't seem
5  to be a dispute about Kumar having access to source code, since he doesn't know anything about
6  coding. As to the remaining issues, the Court decided to follow the example of *Deloitte Tax LLP*
7  *v. Murray*, 2022 WL 1406612 (N.D. Ohio May 4, 2022), and ordered Fareportal to identify
8  particular categories of information that Kumar should not be allowed to see and to explain why
9  such access presents an unacceptable competitive risk. The Court then ordered Kumar to respond
10 (HNA and Chen were free to respond as well, if they cared about this issue; they didn't). The
11 Court also ordered Fareportal to propose a logging procedure for documents not provided to
12 Kumar, to enable him to challenge any such withholdings.

13       Fareportal proposed its categories of HC-Kumar information in ECF No. 92. They consist
14 of (1) financial information that post-dates Kumar's employment at Fareportal, (2) supplier
15 agreements that post-date Kumar's employment at Fareportal, and (3) business planning
16 information that post-dates Kumar's employment at Fareportal. Kumar objected to these
17 categories, ECF No. 100, and Fareportal filed a reply. ECF No. 103.

18       Kumar's employment at Fareportal ended on May 27, 2016, and Kumar's best argument is
19 that Fareportal's proposed date restriction doesn't make sense. You see, the complaint alleges that
20 *after* Kumar left Fareportal for Travana, he and the other defendants began a campaign of business
21 defamation against Fareportal. Complaint ¶¶ 92-95, 98-99. This is a big part of Fareportal's
22 unfair competition claim against him. *Id*. ¶¶ 159-64. But, Kumar argues, if he is barred from
23 seeing three fairly broad categories of information – including financials and business planning
24 documents that seem to go to the heart of the defamation claim – how will he be able to show that
25 his alleged statements *weren't false*? He also tosses in the observation that information from
26 2017, 2018 and 2019 is pretty stale. The Court further notes that although the complaint alleges in
27 paragraph 165 that Kumar and other defendants continue to defame Fareportal to this day, because
28 Travana is bankrupt and Kumar is no longer in the travel business, this allegation is not likely true.

In other words, Kumar likely needs to see information from after he left the company to test whether his statements were false, but there is also probably an end point to the alleged misconduct after which there are no other statements whose truth or falsity matters.

So, at the December 8, 2022 hearing, the Court asked Fareportal why the end date for the three proposed categories of information to be denied to Kumar should not be later. Fareportal responded that Kumar's disparaging statements, even if made after he left Fareportal, all concerned events that happened before he left the company. However, as the Court explained at the hearing, Fareportal's allegations in the Complaint are not limited in that way. There is nothing to suggest that Fareportal's disparagement claim is limited to statements about events that happened prior to May of 2016. Paragraph 103 of the Complaint provides an example of one of the alleged disparaging comments: "One such example of the Defendants and co-conspirators' attempts to destroy Fareportal was a September 15, 2016 e-mail from Park, in which he stated, in pertinent part, 'I referred to CheapoAir'" – meaning Fareportal – "'on purpose, because the public knows them as CheapoAir, and I love the reference to cheapness . . . cheapness to employees, cheapness to customers, cheap and evasive tricks on the regulatory and the industry. We want to impose as much brand damage as we can on Sam Jain's company.'" That does not sound like an allegation that Park said Fareportal *was* cheap prior to May 27, 2016 but isn't anymore. Similarly, paragraph 101 alleges that "Chen directed non-party Co-conspirator #2 to engage PR firms to dig up and publish dirt about Fareportal and Sam Jain." It is not a fair reading of that allegation that the PR firms were engaged to dig up and publish dirt only if it was stale because it related to facts as of May 27, 2016 that weren't true anymore. (And please remember that claim five in the Complaint alleges civil conspiracy, so Fareportal is trying to hold Kumar accountable for disparaging statements made by others, and therefore he does need to be able to show if those statements were true.)

It's true that some of the allegations say that the disparaging parties emphasized that they were former Fareportal employees, presumably to make the defamation more believable because this means they would know what they're talking about. For example, paragraph 103 of the Complaint alleges that "Chin, Shi, and Kumar, and non-party co-conspirators Park, Zimring, and

3

1  Co-conspirator #2 actively promoted the idea that the former Fareportal employees misleadingly
2  portray themselves as 'ex-Fareportal employees' to industry reporters without disclosing that they
3  worked for Fareportal's direct competitor, Travana, to discuss alleged wrongful employment
4  practices and customer deception." Statements by former employees might take the form: "When
5  I was at Fareportal, I witnessed wrongful conduct." But the speaker does not mean to say, and the
6  listener will not hear: "But there is no reason to think any wrongful conduct continued after May
7  27, 2016, so there is nothing for you to worry about." Statements by former employees trashing
8  the company are intended to convey that the problems they observed likely continued to be
9  problems. Isn't that the whole point of committing the alleged disparagement? In summary, a
10 close reading of the Complaint's allegations belies Fareportal's argument that Kumar's alleged
11 disparaging statements related only to events preceding May 27, 2016.

12 At the hearing, the parties did agree on when the alleged disparaging statements likely
13 came to an end: when Travana filed for bankruptcy, which paragraph 111 of the Complaint says
14 happened on April 19, 2017. Once the disparaging statements ceased, then in general, so did
15 Kumar's need to have access to evidence to prove that the statements were true. The Court also
16 sees little harm in expanding the proposed end date to 11 months after Kumar left Fareportal
17 because April 2017 is five and a half years ago, so that information is stale. At the hearing,
18 Fareportal made the good point that it was theoretically possible that a document from after April
19 19, 2017 could relate to the disparagement claim, and if so they would agree to produce it to
20 Kumar. Accordingly, for all three of Fareportal's proposed categories of information that would
21 not be provided to Kumar, the Court accepts the substantive categories but concludes that Kumar
22 is entitled to documents through April 19, 2017 (except that financials will be through 2019; see
23 below), and except that Fareportal must produce to Kumar any document that relates to the
24 disparagement claim regardless of time frame.

25 The Court overrules most of Kumar's remaining objections. The fact that publicly traded
26 companies file quarterly and annual financial reports does not mean that non-publicly traded
27 companies have no confidentiality concerns about disclosing financial information that they keep
28 confidential and choose not to share with the public. Kumar argues that some of the information

4

being withheld from him could be relevant to a New York Attorney General investigation or a class action lawsuit in Canada, but that does not explain why he needs that information in this case. Kumar also argues that Fareportal's proposed categories are too broad. However, the Court does not see why, for liability purposes, Fareportal's documents from after April 2017 would have much relevance. The liability conduct is bounded by time and seems to have a clear end.

That leaves us with damages. The Court discussed this issue with the parties at the hearing and has thought about it some more after the hearing. This is a difficult issue. One of the difficulties has to do with timing. Under the current case schedule, fact discovery closes before opening expert reports are due. That means we can't wait until Fareportal serves its expert report to figure out what financial information Kumar needs to rebut the report. It will be too late. At the same time, we don't know right now exactly what Kumar needs because – well, because we don't have Fareportal's expert report.

This means the Court must balance competing interests and make an educated guess. Current and recent financial information implicates Fareportal's greatest concerns. It is also less likely to be relevant to damages for conduct that ended five and a half years ago and before Covid turned the travel industry upside down in 2020. By contrast, financial information from before the alleged misconduct, during the alleged misconduct, and for a couple of years after the alleged misconduct is much more relevant to damages. And it's also stale. Thus, the financial information Kumar needs the most is also of lesser concern to Fareportal. Weighing the parties' competing interests, the Court concludes that Kumar may have access to Fareportal's financial information through the end of 2019.

Finally, as the Court explained at the hearing, Fareportal's proposed order is titled "stipulated protective order," it contains language in section 1 about the parties agreeing and acknowledging things, and it has signature blocks at the end for the parties. However, Kumar is not stipulating to this order; he is opposed to it. Fareportal shall remove all references to the order being a stipulation and simply submit it as a proposed order for the undersigned's signature.

The Court accordingly orders Fareportal to revise its proposed order to conform to this

5

order[2] and file it within seven days.

**IT IS SO ORDERED.**

Dated: December 13, 2022

THOMAS S. HIXSON
United States Magistrate Judge

---

[2] Fareportal may also make the changes proposed by HNA as discussed at the hearing.

6